**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| Domingo Tot Quip,<br><br>     Petitioner,<br><br>   v.<br><br>David Wesling<br>Immigration and Customs Enforcement,<br>Field Office Director, et al,<br><br>     Respondents. | Civil Action No. 1:26-cv-10361-MJJ |

**DECLARATION OF**
**ACTING ASSISTANT FIELD OFFICE DIRECTOR BRIAN E. SULLIVAN**

Pursuant to the authority of 28 U.S.C. § 1746, I, Brian E. Sullivan, Acting Assistant Field Office Director for U.S. Department of Homeland Security, United States Immigration and Customs Enforcement, Enforcement and Removal Operations, Burlington, Massachusetts, declare as follows:

1. I am employed by the Department of Homeland Security, Immigration and Customs Enforcement ("ICE"), as an Acting Assistant Field Office Director ("(A)AFOD") located in Burlington, Massachusetts. I have held this position since February 2026, and I have been employed by ICE since March 2009.

2. As (A)AFOD, my official duties include overseeing the management, monitoring, scheduling, and execution of removal orders for noncitizens in ICE custody whose cases involve federal litigation. This entails ensuring compliance with court orders, legal

1

mandates, and applicable policies while coordinating with agency counsel and the Department of Justice to address litigation-related requirements.

3. I have experience utilizing ICE record systems to obtain information regarding specific aliens. ICE maintains electronic and paper records on noncitizens. These records are made in the course of regularly conducted business activity at or near the time of relevant events by a person with knowledge of these events. In preparing this declaration, I have examined ICE official records, not limited to, but including the Enforce Alien Removal Module ("EARM"). EARM is an electronic database ordinarily relied upon to ascertain an alien's immigration history, current case status, and plans for removal, if any.

4. While preparing this declaration, I have examined the official records available to me regarding the immigration history and custody status of Domingo Tot Quip ("Petitioner").

5. On or about January 27, 2026 at 8:54 a.m. EST, the U.S. Attorney's Office e-mailed the Petition and Order of the U.S. District Court of Massachusetts to ICE Enforcement and Removal Operations ("ERO").

6. On or about January 27, 2026 at 4:37 p.m. EST, ICE Enforcement and Removal Operations ("ERO") requested further information, such as the Alien Number (A#) for the Petitioner. ICE was unable to identify the Petitioner based only on the name and birthdate provided in the Petition because the Petitioner's name and birthdate were not an exact match to any of the aliens listed in ICE's records regarding arrests conducted on the arrest date, which Petitioner's attorney provided. ICE did identify one possible match (hereinafter, "Subject A"), who had the same birthdate, arrest date, and country of nationality; however, Subject A had a different last name from Petitioner. Based on the different last name, it was unclear if the two identities were a match. Subject A had a final

removal order and was removed from the United States. ICE was notified from the U.S. Attorney's Office that Petitioner's counsel did not have additional identifying information, such as other aliases or possible last names, for the Petitioner. Name and other personally identifiable information ("PII") for Subject A cannot be provided due to privacy and confidentiality rules. PII for Subject A also could not be provided to Petitioner's attorney for these same reasons.

7. Between January 27, 2026 and February 6, 2026, ICE continued to make numerous attempts to identify the correct Petitioner. However, ICE could not identify the Petitioner based on the information Petitioner's attorney provided.

8. To exhaust all available options to identify the Petitioner, ICE requested that the Petitioner's counsel provide a photograph of the Petitioner. Thereafter, Petitioner's counsel provided a photograph.

9. On or about February 6, 2026, I reviewed the photograph of Petitioner that was provided. After reviewing ICE databases and records, I determined that Petitioner and Subject A were not the same person. Upon arrest, ICE processed Petitioner under Subject A's identity and inadvertently determined that Petitioner had a final removal order.

10. Upon correctly identifying Petitioner, I reviewed ICE's database and identified the correct information about Petitioner's immigration history, as explained in Paragraphs 11-14.

11. On or about January 21, 2026, ICE officers encountered Petitioner at or near Portland, Maine. At that time, Petitioner was misidentified as Subject A, and the arresting ICE officers incorrectly believed that Petitioner had a final removal order. In fact, Petitioner did not have a final removal order, and this arrest was Petitioner's first encounter with

Immigration Officials after entering the United States without inspection, admission, or parole.

12. After Petitioner's arrest in Portland, Maine, ICE officers transferred Petitioner to the hold room at the ICE Boston Field Office in Burlington, Massachusetts.

13. On January 23, 2026, ICE transferred Petitioner from Massachusetts to Alexandria, Louisiana to stage him for removal. Petitioner departed from the Lawrence F. Hanscom Field Airport in Bedford, Massachusetts at approximately 2:12 p.m. EST on January 23, 2026, on an ICE-contracted flight to Louisiana. Petitioner's flight arrived in Louisiana at approximately 6:02 p.m. CST.

14. On January 28, 2026, ICE inadvertently removed Petitioner to Guatemala. The ICE-contracted removal flight departed Alexandria, Louisiana, at approximately 11:14 a.m. CST on January 28, 2026, and arrived in Guatemala at 1:49 p.m. CST that same day.

15. Immediately upon discovering this inadvertent removal, I initiated the process to have the Petitioner returned to the United States to be returned to the status quo prior to the inadvertent removal.

16. To facilitate Petitioner's return, ICE intends to parole the Petitioner into the United States. The first step in the parole process is for ICE to complete an application for parole. The application for parole requires additional personal information for the Petitioner, including but not limited to Petitioner's passport number and the address where Petitioner intends to reside in the United States. ICE intends to expedite the processing of the application for parole, which usually takes approximately thirty (30) days. ICE will expedite this process and expects that a completed application for parole would take approximately seven (7) days to complete the required documents and grant the benefit. The second step is

4

coordinating the return flight to the United States, which requires coordination between ICE, the U.S. Embassy in Guatemala, the Government of Guatemala, and the Petitioner. At this time, ICE does not have an exact timeframe for coordinating the logistics of the return flight. The return flight will be at government expense.

17. After taking initial steps to begin the application for parole process, I learned that Petitioner had to be located in Guatemala, and I advised that Petitioner needed to provide the required information listed above to complete the application for parole.

18. On or about February 27, 2026, the ICE attaché in coordination with the U.S. Embassy in Guatemala assigned investigators to locate the Petitioner. At the time, ICE and the U.S. Embassy only knew Petitioner's name and birthdate and that he was located in rural Guatemala. No phone number or address were provided by Petitioner's counsel.

19. On or about March 2, 2026, the U.S. investigators located Petitioner in Guatemala, provided his local telephone number to ICE and indicated that the Petitioner speaks Spanish and will await a call from his attorney. Respondents promptly provided this information to the U.S. Attorney's Office on the same day to be provide to Petitioner's counsel.

20. On or about March 16, 2026, ICE learned that Petitioner wanted to return to the United States. On or about the same day, Petitioner's counsel was notified that a copy of his Guatemalan passport or passport number is required for completion of the parole application.

21. On or about March 19, 2026, Petitioner's counsel reported that Petitioner does not have a Guatemalan passport. On or about the same day, Petitioner's counsel then claimed that

Petitioner does have a Guatemalan passport, and it might have been retained by ICE at the time of arrest.

22. After a thorough search of ICE property records relating to both identities, ICE determined that Petitioner's passport is not in ICE's possession at this time. ICE's records indicate that Petitioner's personal property was sent with him from Massachusetts to Louisiana, and his personal property was sent with him on the removal flight to Guatemala. It is customary for the personal property for aliens removed to be given to the Guatemalan Government at arrival. ICE did find that his money is in the safe at the field office and did not go with the Petitioner.  ICE will work with the Petitioner's attorney to ensure return of the money to the Petitioner.

23. On or about April 20, 2026, ICE relayed the results of this investigation to Petitioner and the following information, through counsel. ICE has explored the option of a laissez-passe in lieu of requiring the Petitioner to obtain a Guatemalan passport; however, the U.S. Embassy has advised ICE that the Government of Guatemala will not allow this type of pass and requires a passport for Petitioner to leave the country and enter the United States. ICE further conveyed that that Petitioner must obtain a Guatemalan passport in order for the parole application to be completed, and that, if he provides confirmation that he filed a passport application, and pays the approximately $50.00 USD fee then the U.S. Embassy would work with the Government of Guatemala to have the passport application expedited.

24. ICE understands the gravity of the inadvertent removal and is working diligently to rectify this error while complying with all rules and regulations to facilitate Petitioner's return to the United States. At present, ICE cannot move forward with Petitioner's return until he

completes the application for a passport with the Government of Guatemala. ICE cannot complete this application for a passport or pay any associated fees for this application for the Petitioner.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Signed on the 30th of April 2026.

BRIAN E SULLIVAN
Digitally signed by BRIAN E SULLIVAN
Date: 2026.04.30 11:15:28 -04'00'

Brian E. Sullivan
Acting Assistant Field Office Director
U.S. Department of Homeland Security
United States Immigration and Customs Enforcement
Burlington, Massachusetts